IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **LESIA NELSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-14-982-STE |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed the administrative record (hereinafter TR. ____). Both parties to the proceedings have consented to the exercise of jurisdiction by a United States Magistrate Judge to order the entry of judgment. Upon review of the pleadings, the record, and the parties' briefs, it is the opinion of this court that the Commissioner's decision must be **AFFIRMED**.

    **I.    Procedural Background**

Plaintiff's application for benefits was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 9-27). The Appeals Council denied Plaintiff's request for review, thus the ALJ's decision became the final decision of the Commissioner. This judicial appeal followed.

## II. The Administrative Decision

The Commissioner followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. The ALJ first determined Plaintiff had not engaged in substantial gainful activity since January 10, 2011, the alleged disability onset date. (TR. 12). At step two, the ALJ determined Plaintiff has the following severe impairments:

> [D]egenerative disc disease; obesity; obstructive sleep apnea syndrome; snoring; optimal CPAP titration; degenerative joint disease of the left knee with associated patellar and femoral condylos chondromalacia; old re-tear of the left medial meniscus; radiculopathy of unknown origin; degeneration of lumbar or lumbosacral intervertebral disc; cervical spondylosis without myelopathy; sacroiliitis, not elsewhere classified; osteoarthritis in both knees, more specifically medial compartment arthritis with narrowing of the articular width; gastritis; hypertension; bipolar disorder; borderline intellectual functioning (estimate); personality disorder, not otherwise specified; an impulse control disorder; and an anxiety disorder.

(TR. 12). At step three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 19).

At step four, the ALJ found Plaintiff retained the residual functional capacity (RFC) to perform medium exertion work with the following restrictions:

> [T]he claimant can occasionally lift and/or carry (including upward pulling) 50 pounds; frequently lift and/or carry (including upward pulling) 25 pounds; stand and/or walk (with normal breaks) for six hours in an 8-hour workday; sit (with normal breaks) for six hours in an 8-hour workday; the claimant must periodically alternate sitting and standing; the

> claimant's ability to push and/or pull (including operation of hand and/or foot controls) is unlimited up to the poundages identified above; the claimant's visual acuity with glasses is 20/60 in the right eye and 20/20 in the left eye; the claimant can carry out simple instructions with routine supervision; can interact appropriately with supervisors and co-workers on a superficial basis; can adapt to a work situation; but cannot interact with the general public.

(TR. 21-22). Based on this, the ALJ found Plaintiff could not perform her past relevant work. (TR. 25). At step five, the ALJ found there are jobs that exist in significant numbers in the national economy Plaintiff can perform. (TR. 25-26). Accordingly, Plaintiff was found to be not disabled from the alleged onset date through the date of the ALJ's decision. (TR. 26-27).

### III.   Issues Presented

On appeal, Plaintiff raises three challenges to the ALJ's RFC determination.

### IV.   Standard of Review

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

### V.   Analysis

### A. RFC – Dr. Tabor

Plaintiff first argues that the ALJ erred by giving great weight to Dr. Tabor's opinion but then failing to incorporate the findings of Dr. Tabor's Mental Residual

Functional Capacity Assessment ("MRFCA") into the RFC in terms of "work related functions." (ECF No. 15:3-7). State agency psychologist, Dr. Tabor, completed a MRFCA form and in Section I checked boxes indicating Plaintiff is "Markedly Limited" in her ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public. (TR. 350-51). Dr. Tabor also checked a box indicating that Plaintiff is "Moderately Limited" in her ability to maintain attention and concentration for extended periods. (TR. 350). In Section III of the same form, Dr. Tabor included the following narrative:

> Claimant is capable of carrying out simple instructions with routine supervision. Claimant is capable of interacting appropriately with supervisors and coworkers on a superficial basis but not with the general public. Claimant can adapt to a work situation.

(TR. 352). At the administrative hearing, the ALJ posed a hypothetical to a vocational expert ("VE") that included, *inter alia*, Dr. Tabor's Section III limitations verbatim. (TR. 68-71). In response, the VE testified that Plaintiff would not be able to perform her past relevant work but would be able to perform other jobs in the national economy. (TR. 74-75).

Although the ALJ incorporated Dr. Tabor's Section III summation into his ultimate RFC determination, Plaintiff complains that the ALJ did not specifically incorporate the checkbox findings of Section I. Plaintiff contends that the RFC did not include a "clear indication reflecting that [Plaintiff] has 'marked' limitations in the ability to understand and remember detailed directions; and, the inability to interact

4

appropriately with the general public or moderately limited in the ability to maintain attention and concentration for extended periods." (ECF No. 15:5-6) (citing to Dr. Tabor's MRFCA, TR. 350-51). Plaintiff further argues that the portion of the RFC indicating she can perform "simple tasks with routine supervision" is insufficient because this restriction is not "logically connected" to Dr. Tabor's Section I checked boxes indicating she is markedly limited in her ability to understand, remember and carry out detailed instructions. (ECF No. 15:6). As explained below, Plaintiff is misconstruing the proper application of a MRFCA form in a disability determination.

The Tenth Circuit has previously held that an ALJ's failure to discuss a Section I finding in an MRFCA is not reversible error. *See Sullivan v. Colvin*, No. 12–5147, 2013 WL 950970, at *3 (10th Cir. Mar. 13, 2013). In *Sullivan*, the state agency doctor had checked a box in an MRFCA Section I indicating that the plaintiff was moderately limited in the ability to maintain a schedule, regular attendance and complete a normal workday. *Id.* On appeal, the plaintiff alleged that the ALJ committed legal error in failing to specifically discuss that limitation. *Id.* The Tenth Circuit disagreed, concluding that:

> According to the guidance in the Social Security Administration's Program Operations Manual System (POMS), "Section I of the Mental RFC Form is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment, whereas Section III—Functional Capacity Assessment, is for recording the mental RFC determination." "*It is in Section III that the actual mental RFC assessment is recorded, explaining the conclusions indicated in Section I, in terms of the extent to which these mental capacities or functions could or could not*

5

> *be performed in work settings." Id.* Thus, as the Magistrate Judge ruled, the ALJ accepted the state agency's ultimate opinion that, with all of the moderate limitations, Ms. Sullivan could perform unskilled work.

*Id.* (emphasis provided, internal brackets and citations omitted).

Likewise, in *Carver v. Colvin*, 600 F. App'x. 616 (10th Cir. 2015), the plaintiff argued that the ALJ erred because he only incorporated the state consultant's MRFCA Section III assessments into the RFC and not those from Section I. *Id.* at 618. The Tenth Circuit rejected this argument based on the same reasoning set forth above in the *Sullivan* decision. *Id.* at 619.

Although unpublished, *Sullivan* and *Carver* are factually almost identical to the present case and their holdings are in accordance with other courts who have examined the issue. *See, e.g., Israel v. Astrue*, 494 F. App'x 794, 797 & n.1 (9th Cir. 2012) (noting that "[the claimant] cites [no authority] that requires the ALJ to separately weigh and consider each checked box in Section I of the MRFCA" and citing the SSA's Program Operations Manual System); *Smith v. Comm'r. of Soc. Sec.*, 631 F.3d 632, 636 (3rd Cir. 2010) (holding that the claimant "cannot rely on the worksheet component of the [MRFCA]" and collecting cases in support); *Anderton v. Colvin*, No. 2:11–CV–00894–DN–DBP, 2013 WL 1284350, at *8 (D. Utah Mar. 4, 2013) (rejecting the plaintiffs allegation that the ALJ was required to consider and discuss findings in Section I of the MRFCA form because Section III's narrative is the actual assessment); *Sitzman v. Astrue*, No. 7:11CV5006, 2012 WL 1437281, at *8 (D. Neb. Apr. 25, 2012) ("'Because the actual assessment is contained in Section III, courts have consistently held that it is

not error for an ALJ to omit restrictions identified in Section I in his RFC analysis.'" (citing *Kane v. Astrue*, No. 1:10CV1874, 2011 WL 3353866, at *3 (N.D. Ohio Aug. 3, 2011) (collecting cases in support)).

In a related argument, Plaintiff relies on *Jamarillo v. Colvin,* 576 F. App'x 870 (10th Cir. 2014) to contend that the ALJ erred in his RFC determination because he did not express the limitations related to Plaintiff's mental impairments in terms of work-related functions. The Court disagrees.

In *Jaramillo*, the ALJ's RFC limited the claimant to "simple, routine, repetitive, and unskilled tasks." *Id.* at 873. The plaintiff argued the RFC determination violated the requirement of Social Security Ruling ("SSR") 96–8p, which mandates that "nonexertional capacity must be expressed in terms of work related functions" or "[w]ork related mental activities." *Id.* at 874 (quoting SSR 96–8p, 1996 WL 374184). With regard to how an ALJ should comply with this directive, the court explained that SSR 85-15 provides:

> '[T]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.'

*Id.* at 875 (quoting SSR 85–15, 1985 WL 56857, at *4 (1985). The Tenth Circuit then explicitly stated, "*These abilities are examples of work-related mental functions.*" *Id.* (emphasis provided).

7

The court in *Jamarillo* concluded that the ALJ's RFC of being limited to "simple, routine, repetitive, and unskilled tasks" was essentially just a "limitation to unskilled work." *Id.* at 875-76. Such an RFC would include the ability to perform all of the work-related mental functions in SSR 85-15, even though at least one opinion to which the ALJ gave "great weight" indicated moderate limitations in the ability to carry out instructions, attend and concentrate and work without supervision. *Id*. "A moderate impairment is not the same as no impairment at all … and therefore, must be related" in a dispositive hypothetical to a VE and in the RFC determination. *Id.* at 876.

By contrast, in the present case, the ALJ appropriately reflected Plaintiff's mental impairments in his RFC determination by tracking the language of SSR 85-15 to express them in terms of work-related functions. Dr. Tabor's Section I findings, which again are not individually binding to the RFC, *see Sullivan, Carver* and POMS DI 24510.060, *supra*, indicated Plaintiff has marked limitation in ability to understand, remember and carry out *detailed* instructions and interact appropriately with the general public. (TR. 350-51). These limitations are reflected in Dr. Tabor's Section III findings wherein she stated that Plaintiff is capable of carrying out *simple* instructions with routine supervision, can only interact superficially with supervisors and coworkers and cannot interact with the general public. (TR. 352). The ALJ specifically included the latter in his RFC and in his hypothetical to the VE, limiting Plaintiff to jobs involving *simple* instructions, superficial interaction with coworkers and supervisors and prohibiting interaction with the general public. (TR. 22, 68-71).

8

Thus, contrary to Plaintiff's assertion, the RFC's limitations are "logically connected" to Dr. Tabor's MRFCA. *Jamarillo*, 576 F. App'x at 877. Moreover, the RFC in this case is clearly expressed in terms of work-related mental functions as it is nearly verbatim from SSR 85-15, which provides specific examples of the same. *Jamarillo*, 576 F. App'x at 876 (quoting SSR 85-15).[1]

**B. RFC – Vision**

Plaintiff contends the ALJ's RFC is flawed because while it states that Plaintiff's visual acuity is 20/60 in the right eye and 20/20 in the left eye, it does not express whether the 20/60 visual impairment is near or far sighted. (ECF No. 15:7). As the Commissioner points out, Plaintiff cites to absolutely no authority in support of this argument that visual acuity must be stated in terms of far and near acuity. A VE's testimony provides a proper basis for an ALJ's determination where the plaintiff's

---

[1] The Court notes that while the application of *Jamarillo* to this case does not dictate a reversal of the ALJ's decision, it is important to note that *Jamarillo* is an unpublished decision and therefore, is generally persuasive rather than binding. *See* 10th Cir. R. 32.1(A). In *Jamarillo,* it is not clear to what degree Dr. Mellon's "moderate limitations" were reflected in Section III of his MRFCA form. *Id.* at 872. Thus, to the extent that *Jamarillo* conflicts with decisions such as *Sullivan* and *Carver, supra*, regarding application and consideration of a physician's MRFCA form, courts should consider *Jamarillo* skeptically. While *Sullivan* and *Carver* are also unpublished decisions, their holdings are directly based upon the Social Security Administration's POMS guidelines that specifically provide, "Section I [of the Mental RFC Form] is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment [, whereas] Section III—Functional Capacity Assessment, is for recording the mental RFC determination. … It is in [Section III] that the actual mental RFC assessment is recorded, explaining the conclusions indicated in [S]ection I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." POMS DI 24510.060 (emphasis omitted), available at https://secure.ssa.gov/apps10/poms.NSF/lnx/0424510060.

9

impairments are reflected in the hypothetical inquiries to the expert. *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993).

In this case, the ALJ explained a hypothetical, including Plaintiff's visual acuity limitations, and the VE testified that he understood the same. (TR. 69-70). "Nothing in the law requires she undergo a quiz to determine if [he] is being truthful." *Strickland v. Astrue*, No. CIV–10–272–KEW, 2011 WL 4478552, at *2 (E.D. Okla. Sept. 26, 2011). Based on the hypothetical, the VE testified that Plaintiff could perform various jobs available in the national economy and Plaintiff has not provided any evidence to indicate otherwise. Substantial evidence supports the RFC in this case, as well as the VE's testimony based upon the same. Thus, the decision is affirmed. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).

### C. RFC – Sitting/Standing Limitation

Finally, Plaintiff complains the ALJ's RFC requirement to "periodically alternate sitting and standing" is too vague. (ECF No. 15:7). The language in the RFC mirrors that found in the Physical Residual Functional Capacity Assessment form wherein state-consultant, Dr. Marks-Snelling, specifically indicated Plaintiff "must periodically alternate sitting and standing to relieve pain and discomfort." (TR. 370). Plaintiff argues the ALJ must specify precisely how long a plaintiff can sit without a change of position and that "periodically" is insufficient. (ECF No. 15:8). The Court disagrees.

In asserting this position, Plaintiff relies heavily on SSR 96-9p, which provides:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking)

> periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. *The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.* It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185, at *7 (emphasis provided). As an initial matter, the Court notes that SSR 96-9p is specifically applicable to sedentary work and the RFC in the present case limited Plaintiff to less than a full range of *medium* unskilled work. Thus, as discussed in more detail below, its application to the present case is limited.

Plaintiff also relies upon *Armer v. Apfel*, Nos. 99-7128, 98-CV-424-S, 2000 WL 743680 (10th Cir. June 9, 2000), asserting the court therein ruled that the ALJ's RFC in which he found the plaintiff would have to "change positions from time to time" did not comply with SSR 96-9p and constituted reversible error. However, the decision in *Armer* was based upon numerous errors by the ALJ that significantly distinguish it from the present case.

Unlike the present case, in *Armer,* the ALJ made no specific finding about the plaintiff's ability to sit, stand, or walk, and merely stated that the plaintiff would need to "change positions from time to time to relieve his symptomatology." *Id.* at *2 (internal quotations omitted). The Tenth Circuit also pointed out that a consultative examination, upon which the ALJ appeared to at least partially rely, did not include an RFC

11

assessment, even though the Social Security regulations call for such assessments to be included. *Id.* at *3. Further, the ALJ contradicted even the incomplete consultative examination, which indicated the plaintiff had good dexterity in his hands, by concluding the plaintiff had "unspecified residuals from carpal tunnel syndrome." *Id.* Additionally, the court noted the ALJ made no attempt to identify the "unspecified residuals," nor in any way explain how they manifested themselves into physical limitations. *Id.* The court then stated, "The ALJ's finding that [the plaintiff] would have to change positions from time to time to relieve his symptomatology is equally vague. The ALJ erred by failing to make specific findings assessing the extent of [the plaintiff]'s manipulative impairments and [the plaintiff]'s ability to sit, stand, and walk." *Id.*

Clearly, in *Armer*, the RFC was grossly lacking in necessary information. The ALJ failed to even specify how long the plaintiff could sit, stand or walk, much less how often the plaintiff would need to alternate sitting and standing and/or if that is what the ALJ intended to reference by "change positions." *Id.* at *2-3. There is no question given these glaring omissions in not only the RFC but also the hypotheticals provided to the VE that the VE's testimony could not provide substantial support for the ALJ's ultimate decision regarding jobs the plaintiff could perform. *Id.* at *4.

Similarly, Plaintiff also relies upon *Vail v. Barnhart*, 84 F. App'x 1 (10th Cir. 2003). According to Plaintiff, the court in *Vail* ruled that an RFC indicating a plaintiff would require "brief changes of position (alternate sitting and standing)" constituted reversible

error. (ECF No. 15:7-8). However, Plaintiff's characterization of the *Vail* decision is also incomplete.

In *Vail*, the ALJ's first hypothetical to the VE provided that the plaintiff was "limited to lifting 20 pounds occasionally, ten pounds frequently, [c]an stand or walk for six hours in an eight-hour day[,] [can] only occasionally stoop[,] and needs to be allowed to alternate sitting and standing due to pain." *Id.* at 2, n.1. The VE requested clarification regarding the alternating requirement, the ALJ answered it would be "as needed" and the VE testified there would be no jobs available to the plaintiff. *Id.* The ALJ then omitted "as needed" from the hypothetical and the VE indicated there would be jobs the plaintiff could perform, however, "a new employer would not be likely to make unspecified other accommodations" the plaintiff would likely require "because he was over fifty years of age." *Id.* at 2-3.

In the ALJ's ultimate decision, the RFC consisted only of the ability to perform "less than the full range of light work with brief changes of position" and cited the VE's testimony to determine the plaintiff could perform unskilled light production labor and unskilled sedentary assembly work. *Id.* at 3. The Tenth Circuit reversed and remanded the decision for three reasons: First, "[t]he ALJ did not properly define how often [the plaintiff] would need to change positions even 'as needed' … and he did not offer whether [the plaintiff] would be able to return to previous relevant work." *Id.* at 4. Second, [t]he ALJ failed to acknowledge in his decision whether and how he had evaluated the VE's negative responses to the hypothetical questions he posed." *Id.* at 5.

13

Finally, "[t]he VE's qualification of her statements in the record suggests that [the plaintiff] may not actually be able to hold the positions the ALJ described because he would require accommodation not available to a [plaintiff] with his characteristics." *Id.*

Unlike *Vail*, in the present case, the ALJ did define how often Plaintiff would need to change positions, provided an unambiguous hypothetical to the VE including the same and relied on the VE's corresponding testimony regarding jobs Plaintiff could perform. (TR. 21, 68-71). Further, because Plaintiff is not 50 years of age, there are no additional considerations or accommodations an employer would have to consider that may prevent Plaintiff from keeping one of the identified jobs.

The question in this case essentially comes down to whether "periodically" is a sufficient indication of how often a plaintiff would have to alternate sitting and standing in order for the VE to adequately answer proposed hypotheticals regarding a plaintiff's ability to perform certain work. Clearly, Plaintiff's reliance on *Armer* and *Vail* to answer this question is not compelling.

Several cases involving plaintiffs limited to less than a full range of light work have resulted in reversed and remanded decisions because the RFC at issue was either silent about the frequency with which a plaintiff would need to alternate between sitting and standing or the stated frequency was ambiguous and therefore, failed to comply with SSR 96-9p. *See Staggs-Homady v. Colvin*, No. CIV-13-1368-D, 2014 WL 7429871, at *2, 5 (W.D. Okla. Dec. 31, 2014) (reversing and remanding decision wherein the RFC limited the plaintiff to less than a full range of light work and included a requirement

14

that the plaintiff be allowed the opportunity to alternatively sit/stand "at the workstation without an interruption of productivity"); *Carrell v. Colvin*, No. CIV–13–238–RAW–SPS, 2014 WL 4854693, at *4 (E.D. Okla. Sept. 11, 2014), *adopted in full*, 2014 WL 4854699 (E.D. Okla. Sept. 30, 2014) (recommending reversal and remand where the plaintiff was limited to less than a full range of light work, the ALJ stated claimant needed to alternately sit and stand "throughout the day" and it was unclear whether claimant could perform the jobs found by the ALJ given the RFC limitation); *Newton v. Colvin*, CIV-12-1400-M, 2013 WL 6169298, at *3 (W.D. Okla. Nov. 21, 2013) (reversing and remanding where the plaintiff was limited to less than a full range of light work and the ALJ's RFC and hypotheticals to the VE included only the limitation the plaintiff needs "a sit/stand option"). None of these cases are instructive to the present as each directly implicate SSR 96-9p because the plaintiffs are limited to less than a full range of light work and each of the RFCs involved are more ambiguous than the one presented here.

As noted, SSR 96-9p, upon which Plaintiff relies, is specifically limited by its own terms to cases in which the ALJ has found a residual functional capacity for sedentary work, or the job at issue is defined as sedentary, and the unique definition of such work. On the other hand, SSR 83-12, entitled "Title II and XVI: Capacity to do Other Work --- the Medical –Vocational Rules as a Framework for Evaluating Exertional Limitations Within a Range of Work or Between Ranges of Work" directs an adjudicator to "consider the extent of any erosion of the occupational base" whenever an individual's RFC "does not coincide with any one of the defined exertional ranges of

work." SSR 83-12, 1983 WL 31253, at *1. Of relevance here, the portion of SSR 83-12 contemplating the effect of a need to alternate sitting and standing does not direct an ALJ to specifically quantify a plaintiff's sit/stand option, but does indicate when an ALJ should consult a VE at a hearing. *Id.* at *4 ("In cases of unusual limitation of ability to sit or stand, a [VE] should be consulted to clarify the implications for the occupational base.").

After finding that Plaintiff could sit, stand and/or walk with normal breaks for six hours in an 8 hour workday and periodically alternate sitting and standing, the ALJ in this case complied with SSR 83-12 by consulting a VE and including in the proposed hypothetical the need to periodically alternate between sitting and standing in his hypothetical. (TR. 68-71). Plaintiff does not cite to any evidence in the record specifying any particular limit on the time she could sit or stand before requiring a change in position, nor how long that change in position would have to last. She also does not cite to any evidence indicating she cannot perform the VE's identified jobs. She did not raise any objection to the hypothetical posed by the ALJ during the administrative hearing, nor examine the VE regarding the requirement that she periodically alternate sitting and standing, instead posing only a question regarding the effect of Plaintiff's moderate ability to maintain concentration. (TR. 77-78).

Plaintiff was not limited to light or sedentary work but instead, less than the full range of medium work. (TR. 21-22). The VE identified three jobs within the medium work range that Plaintiff could perform, including laundry worker, order picker and

16

kitchen helper. (TR. 26). A review of the Dictionary of Occupational Titles ("DOT") applicable to each of those jobs reveals that Plaintiff's ability to perform them would not be affected by the requirement that she periodically alternate sitting and standing, even frequently. *See* DICOT #361.685-018, 1991 WL 672987 (laundry worker); DICOT 922.687-058, 1991 WL 688132 (order picker); DICOT 318.687-010 (G.P.O.), 1991 WL 672755 (kitchen helper). In accordance with this finding, the Court notes that even if the ALJ might have been more specific as to the frequency of Plaintiff's need to alternate sitting and standing, which this Court has not concluded, courts have affirmed decisions wherein a VE has also identified laundry worker and kitchen helper as potential jobs for a plaintiff with a requirement to alternate, with significant frequency, sitting and standing. *See Parson v. Comm'r of Soc. Security*, No. 4:13–cv–04045–JEH, 2015 WL 3524595, at *2-3, 5 (C.D. Ill. June 3, 2015) (affirming decision wherein the plaintiff's RFC included need to alternate sitting and standing every hour and the VE identified laundry worker as a job the plaintiff could perform); *McClung v. Comm'r, Soc'l Security Admin.*, No. 2:13CV143, 2014 WL 4748599, at *6 (E.D. Tex. Sept. 23, 2014) (identifying kitchen helper as medium, unskilled work that the plaintiff could perform with the requirement that they be permitted to alternate sitting and standing at will, ALJ's decision reversed on other grounds); *Manor v. Astrue*, No. 3:10CV0274, 2011 WL 2940356, at *2, 9 (S.D. Ohio June 9, 2011) (affirming decision wherein the plaintiff's RFC included medium work with the need to alternate sitting and standing once per

17

hour and the VE identified, *inter alia*, both laundry worker and kitchen helper as available jobs the plaintiff could perform).

Plaintiff fails to cite to any authority in which a court has ruled that an RFC requirement that Plaintiff "periodically" alternate sitting and standing was insufficient. Rather than set forth evidence indicating Plaintiff cannot perform the identified jobs, she has challenged the RFC primarily on the basis of its format. Unlike the cases upon which Plaintiff relies in asserting this challenge, the ALJ relied on completed consultative examinations, included information in his RFC regarding Plaintiff's ability to stand, sit and walk for specific periods of time within a workday and incorporated into the RFC the consultative examiner's specific findings regarding Plaintiff's need to periodically alternate sitting and standing. (TR. 21-22). Based on the DOT guidelines, SSR 83-12 and related case law, the Court concludes that the VE's testimony provides substantial support for the ALJ's decision, thus, it is hereby **AFFIRMED**.

**ENTERED** on September 8, 2015.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE